Justin A. Palmer [SBN. 270857]
Paige S. Poupart [SBN. 343547]
**FILER | PALMER, LLP**
249 E. Ocean Blvd., Suite 501
Long Beach, CA 90802
Telephone: (562) 304-5200
Facsimile: (562) 394-0504
Email: justin@filerpalmer.com

Attorneys for Plaintiff,
AERIN ROBINSON

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AERIN ROBINSON,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF BURBANK; OFFICER ULRLCH (#14417); OFFICER MORENO (#14768); OFFICER QUINTERO (#15263); OFFICER EKIMYAN (#14339); OFICER N. MUNN (#15509); OFFICER D. LINDQUIST (#14349); SGT. FEKETY (#12179); SGT. VIRZI (#13176); OFFICER DEBELIUS (#13850); OFFICER HOSEPIAN (#14849); OFFICER SCHWARTZ (#15035); OFFICER CHOI (#15407); OFFICER HOBSON (#15485); LT. D. GREEN (#11203) and Does 1-50, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**<br><br>1) DEPRIVATION OF CIVIL RIGHTS – UNLAWFUL ARREST (42 U.S.C. § 1983)<br>2) UNREASONABLE SEARCH AND SEIZURE – EXCESSIVE FORCE (42 U.S.C. § 1983)<br>3) MALICIOUS PROSECUTION (42 U.S.C §1983)<br>4) MUNICIPAL LIABILITY – UNCONSTITUTIONAL CUSTOM OR POLICY (42. U.S.C. § 1983)<br>5) MUNICIPAL LIABILITY – FAILURE TO TRAIN (42. U.S.C. § 1983)<br>6) MUNICIPAL LIABILITY – SUPERVISORY LIABILITY (42. U.S.C. § 1983)<br>7) DEPRIVATION OF CIVIL RIGHTS – FABRICATION OF EVIDENCE (42 U.S.C. § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

Plaintiff Aerin Robinson, complains against **Defendants, CITY OF BURBANK;** OFFICER ULRLCH (#14417); OFFICER MORENO (#14768); OFFICER QUINTERO (#15263); OFFICER EKIMYAN (#14339); OFICER N. MUNN (#15509); OFFICER D. LINDQUIST (#14349); SGT. FEKETY (#12179); SGT. VIRZI (#13176); OFFICER DEBELIUS (#13850); OFFICER HOSEPIAN (#14849); OFFICER SCHWARTZ (#15035); OFFICER CHOI (#15407); OFFICER HOBSON (#15485) **And Does 1-50** as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4), because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendments of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in this district, and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

3.      This is a civil rights action seeking compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the false arrest and malicious prosecution of Plaintiff, Aerin Robinson.

4.      At all relevant times, Plaintiff, Aerin Robinson ("Plaintiff") was an individual residing in the City of Burbank, California.

5.      At all relevant times, Defendant **City of Burbank** ("COB") is and was a municipal corporation existing under the laws of the State of California. At all relevant times, COB was the employer of Defendants**;** OFFICER ULRLCH (#14417); OFFICER MORENO (#14768); OFFICER QUINTERO (#15263); OFFICER

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

EKIMYAN (#14339); OFICER N. MUNN (#15509); OFFICER D. LINDQUIST (#14349); SGT. FEKETY (#12179); SGT. VIRZI (#13176); OFFICER DEBELIUS (#13850); OFFICER HOSEPIAN (#14849); OFFICER SCHWARTZ (#15035); OFFICER CHOI (#15407); OFFICER HOBSON (#15485); LT. D. GREEN (#11203) **And Does 1-50**, inclusive, were are believed to be residents of the **City of Burbank, California. Does 1-50** are sued in their individual capacity.

6. At all relevant times, the named officers and **Does 1-50** were duly authorized employees and agents of COB, who were acting under color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant COB. At all relevant times, **Does 1-50** were duly appointed officers and/or employees or agents of COB, subject to oversight and supervision by COB elected and non-elected officials.

7. In doing the acts and failing and omitting to act as hereinafter described, **Does 1-50** were acting on the implied and actual permission and consent of COB.

8. The true names of Defendants **DOES 1-50**, inclusive, are unknown to Plaintiff, who otherwise sue these defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacity of these defendants when they have been ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct or liabilities alleged herein.

9. At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

10. On September 2, 2021, Mr. Aerin Robinson was a lawful patron at the United States Postal Service ("Subject Location") located at 135 Olive Avenue in Burbank, California. Mr. Robinson was at the Postal Office paying his personal bills.

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

11.     At the time of the incident, Mr. Robinson had $4,200 cash in an envelope on his person for the purpose of paying his bills. While Mr. Robinson was waiting in line to be serviced, Mr. Robinson placed his envelope on one of the tables provided by the Postal Office while he organized his belongings for processing.

12.     At the same time, a transient woman was seated on the ground underneath that same table where Plaintiff was standing.  The woman was later identified as Aisha Eastling. Ms. Eastling was a transient person who had no lawful business purpose to be at the Subject Location, and who remained on premises without the permission of the United States Postal Service.

13.     While organizing his belongings, the envelope containing the cash fell from the table and onto the floor. Before Mr. Robinson could retrieve his envelope from the floor, Ms. Eastling grabbed the envelope and quickly removed the cash.

14.     Realizing his belongings had fallen to the ground, Mr. Robinson reached for the envelope. After reaching for the ground, Mr. Robinson observed Ms. Eastling grabbing the envelope. Mr. Robinson managed to remove the envelope from her grasp, but learned she had stolen the $4,200 in cash.

15.     Mr. Robinson asked Ms. Eastling  to return the money but she refused.

16.      A store clerk called 911 at or around 3:13 p.m., relaying there was an alleged "domestic dispute" involving a man and woman in front of the Post Office lobby.

17.     The clerk described the woman as transient, homeless and that she had remained on the premises without a business purpose.

18.     The clerk informed the dispatcher that the man, Mr. Robinson, had accused the woman of stealing his money and that Mr. Robinson was unarmed.

19.     The clerk requested both Mr. Robinson and the transient woman to leave the building and handle the "dispute" outside.

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER
COLOR OF STATE LAW**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

20. Ms. Eastling exited the Post Office Lobby with $4,200 in cash in her hand. Mr. Robinson then followed her out and repeatedly, but politely requested she return the money to him.

### **Detention and Assault of Mr. Robinson**

21. At or around 3:16 p.m. on September 2, 2021 Defendant Officers Munn and Lindquist arrived to the SUBJECT LOCATION. Upon arrival, however, Burbank Police Officers did not observe any ongoing altercation between Mr. Robinson and Ms. Eastling.

22. Upon arrival, the officers did not observe Mr. Robinson screaming or yelling at Ms. Eastling.

23. Upon arrival, the officers did not observe Mr. Robinson assaulting Ms. Eastling.

24. Upon arrival, the officers did not observe Mr. Robinson make any threats or advancements towards Ms. Eastling.

25. In addition, Burbank Police Officers did not see any evidence of an assault with Ms. Eastling when they arrived on scene. Eastling did not have any cuts, brises or report that she was involved in a domestic dispute with Mr. Robinson.

26. On arrival, officers observed Mr. Robinson outside the post office, kneeling down on the sidewalk gathering his belongings from the floor placing and them into a small box. Officers also observed Ms. Eastling standing over Mr. Robinson as he collected his personal property.

27. At all relevant times, Mr. Robinson was respectful and compliant. In fact, Mr. Robinson advised both officers that the woman had stolen his money and requested their assistance.

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

28. After Mr. Robinson gathered his belongings, Plaintiff is informed BPD officers formed a plan to separate him and Ms. Eastling. During the detention, Eastling yelled over Mr. Robinson about unintelligible matters.

29. During the detention, Defendant Officers Munn and Lindquist instructed Mr. Robinson to follow Officer Lindquist and move away from Eastling. Mr. Robinson complied without protest, carrying his personal belongings in his hand.

30. While separated, Mr. Robinson spoke with Officer Munn and calmly explained Eastling had stolen his money despite her denials. Body Worn Camera depicts Plaintiff demeanor as concerned, confused and complaint:



31. Next, Officer Munn instructed Plaintiff to sit on a narrow ledge connected to the fence in front of the Postal Office. Without protest, Mr. Robinson complied releasing the items in his left hand. At all relevant times, Plaintiff posed no

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

threat to himself, officers or members of the general public and did not make any aggressive gestures towards law enforcement.

32.     Less than two seconds after placing his personal belongings down, as commanded to do so, Officer Hobson forcibly removed Plaintiffs remaining property from his person and used unreasonable and excessive force on him. Officer Hobson knocked Mr. Robinson's belongings from his hands and pushed him, causing Mr. Robinson to fall into a seated position.

33.     There was no need to use any force on Mr. Robinson during the detention. Mr. Robinson was fully compliant throughout this incident and relayed, on multiple occasions, that he was the victim of a theft by Eastling.

34.     After Mr. Robinson was pushed down, approximately six (6) officers surrounded him. At all relevant times Plaintiff was not a threat to himself, others or the officers. Plaintiff is informed Officers Debellius, Hobson, Munn, Lindquist, Ekimyan and Choi, joined in the attack to assault him. Officer Lindquist abandoned his detention of Eastling to participate in the assault on Plaintiff.

35.     Officers Debelius and Munn forcibly grabbed Plaintiff's left arm while Choi and Hobson forcibly grabbed Plaintiff's right arm. The officers acted in concert and twisted Plaintiff's arms behind his back. Immediately after securing Plaintiff's hands behind his back, the officers initiated a takedown. Officers Lindquist and Ekimyan participated in the takedown.

36.     Officers Ekimyan and Choi pinned Plaintiff's legs into the ground while Officer Munn unnecessarily placed a leg restraint device around Mr. Robinson's ankles.  At no point did the officers attempt to deescalate the situation or engage in a less violent approach.

37.     At the time the officers attempt to place Plaintiff in handcuffs, none of the officers had witnessed Plaintiff commit a crime nor have they observed any

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

behavior that would lead a reasonable officer to believe Plaintiff was about to commit a crime. Similarly, Plaintiff did not pose a threat to himself, other or law enforcement, and COB Officers were informed Mr. Robinson was unarmed.

38.     Four separate officers held Mr. Robinson's hands behind his back by four separate officers, which another yelled profanities at Plaintiff. The officer continued to yell profanities at Plaintiff, ordering him to put his hands behind his back, despite Plaintiffs hands already positioned as so.

39.     Debellius, Hobson, Munn and Choi continued to aggressively restrain Plaintiff, culminating with taking him to the concrete.  Lindquist and Ekimyan joined in and participated in the takedown.  During this time Mr. Robinson pled with the officers, reminding them that Plaintiff has no record and that Eastling had stolen from him. The officers successfully tackled Plaintiff to the ground, face down, and position themselves so that Mr. Robinson feels the weight of at least five officers.



**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

40.     With the weight of at least 5 officers on him for one minute Plaintiff gasped for air, telling officers at least 15 times that he could not breathe.

41.     The officers eventually turn Plaintiff over on his side and asks him what his name is. While Plaintiff is on his side, body worn camera depicts one officer with his hands directly pressing down on Plaintiffs neck. Again, Plaintiff reminds officers that he cannot breathe. During the takedown, one officer is heard telling Plaintiff, "Okay, stop breathing." Plaintiff pleas with the officers telling them that he "does not want to be another George Floyd."



42.     Officers continue to ignore Plaintiff's inability to breathe while they apply leg restraints. Officers Ekimyan and Choi pinned Plaintiff's legs into the

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER
COLOR OF STATE LAW**

ground while Officer Munn unnecessarily placed a leg restraint device around Mr. Robinson's ankles.

43.     At the time of the incident, Mr. Robinson was a 5'9", 56-year-old man who weighed 170 pounds. Officers Hosepian, Ekimyan, Munn, Choi and Hobson lifted Mr. Robinson off the ground and carried him to a patrol vehicle. At no point did the officers attempt to deescalate the situation or engage with Mr. Robinson in a less violent manner.

### Domestic Violence Investigation

44.     After his arrest, Mr. Robinson continued to tell officers that the Eastling had stolen his money. He reminded officers that he has no record and demanded to know why he had been arrested.

45.     Mr. Robinson was charged with one (1) count of *Penal Code* §242(A) Assault, and one (1) count of Penal Code §148 Resisting Arrest.

46.     There was no probable cause to arrest Mr. Robinson of any charge. After Plaintiff had already been assaulted by BPD and detained in the back of a patrol vehicle, Officer Moreno resumed the interview of Eastling. Officer Moreno never asked her about the stolen money, what she was doing at the Post Office or any other questions to verify the statement she gave. The information the woman relayed to Officer Moreno completely deviated from every witness statement, including Plaintiff's statement, the 911 call and the objective facts and circumstances available to officers at the time of Plaintiff's arrest.

47.     Every witness BPD interviewed that day who was present during the altercation corroborated Plaintiff's account in that Eastling had stolen his money, that Robinson was simply seeking the return of his personal property and that Robinson had not assaulted Eastling.

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

48. Several witnesses, interviewed by BPD, recalled seeing Plaintiff standing up at the table with his personal property. These same witnesses further recalled Eastling underneath the table at the same time. Each witness confirmed noticing something drop from the table and that Eastling stood up with the envelope.

49. In fact, one eyewitness informed BPD that Eastling woman got up off the ground, and punched Robinson with her right hand.

50. Eastling did not report any injuries from the incident and declined medical attention when offered. BPD then initiated a citizen's arrest, whereby they presented the citizen's arrest form to Eastling. The woman signed the form and BPD placed Mr. Robinson under arrest for battery in violation of California *Penal Code* § 242

51. Mr. Robinson was not resisting and did not physically threaten the lives of the officers, himself or the public. Despite this, the officers exerted unnecessary force, leaving Mr. Robinson with the following injuries:



52. Mr. Robinson was then transported to the hospital where he received treatment for his injuries. In addition to the abrasions on his face and back, Mr.

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

Robinson suffered from a bruised rib. While at the hospital, Mr. Robinson requested an attorney. Mr. Robinson's request was denied. After the hospital, Mr. Robinson was transported to the Burbank Police Station where he was booked.

53.     **Defendants COB and Does 1-50** knew, or should have known, that Mr. Robinson had not committed a crime or interfered with any lawful investigation. Furthermore, Defendants knew or should have known that a citizen's arrest was unlawful.

54.     On April 25, 2022 the District Attorney dismissed the criminal case filed against Plaintiff.

## **Participation, State of Mind and Damages**

55.      All Defendants acted under color of law.

56.     Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each defendant ratified, approved and acquiesced in the violations alleged herein.

57.     As joint actors with joint obligations, each defendant was and is responsible for the failures and omissions of the other.

58.     Each Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiff's rights.

59.     Each Defendant acted with a deliberate indifference to or reckless disregard for an accused's rights for the truth in withholding evidence from prosecutors, for an investigation free of active concealment of material facts, and/or for the Plaintiff's right to due process of law.

60.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of Defendants, Plaintiff has suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock,

humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

61. Due to the acts of the Defendants, Plaintiff has suffered and continues to suffer, and is likely to suffer in the future, extreme and severe mental anguish as well as mental and physical pain and injury. For such injury, Plaintiff will incur significant damages based on psychological and medical care.

62. As a further result of the conduct of each of these defendants, Plaintiff has lost past and future earnings in an amount to be determined according to proof at trial.

## FIRST CLAIM FOR RELIEF

## Deprivation of Civil Rights – Arrest Without Probable Cause (42 U.S.C. § 1983)

## (By Robinson Against Defendants City of Burbank, Burbank Police Department; Officers Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist And Does 1-50)

63. Mr. Robinson repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

64. The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable searches and seizures, including the right to be free from arrest without probable cause. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

65. Defendant **Officers Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist and Does 1-50** acted under color of state law.

66. Defendants **Officers Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist and Does 1-50** detained Plaintiff without reasonable articulable suspicion

or probable cause to believe he had committed a crime and without a warrant, without consent and in the absence of exigent circumstances. At all relevant times, Defendants **Officers Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist and Does 1-50** knew or should have known Mr. Robinson was innocent, and continued to detain him without a lawful justification.

67. Defendants named herein, and each of them, were motivated by bad faith in that Defendants had a preference toward finding Plaintiff guilty and their conduct was done with deliberate indifference to and/or reckless disregard of Mr. Robinson's rights or for the truth.

68. When Defendants caused Plaintiff to be arrested without probable cause, they violated Plaintiff's right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

69. As a result of the conduct of **Officers Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist and Does 1-50** they are liable for Plaintiff's injuries because they were direct or integral participants in the unreasonable detention and arrest, or because they failed to intervene to prevent these violations.

70. The conduct of **Officers Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist and Does 1-50** was willful, wanton, malicious, and done with reckless disregard for Mr. Robinson's rights and safety, and therefore warrants the imposition of exemplary and punitive damages.

71. Mr. Robinson brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF

### Deprivation of Civil Rights – Excessive Force – (42 U.S.C. § 1983)

### (By Robinson Against Officer Choi; Hobson; Debellus; Lindquist; Munn; Hosepian; Ekimyan and Does 1-50)

72.     Mr. Robinson repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

73.      The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable or excessive force. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

74.     At the time of the incident, Mr. Robinson was a 5'9", 56-year-old man who weighed 170 pounds. Defendants **Officers Choi; Hobson; Debellus; Lindquist; Munn; Hosepian; Ekimyan and Does 1-50** while acting under color of law, used excessive force against Mr. Robinson when they forcibly removed Mr. Robinsons personal property from his hands, used force to push Mr. Robinson down while he was already complying, aggressively twisted Mr. Robinsons arms behind his back and slammed him to the ground, and when Defendants laid on top of Mr. Robinson, constricting his airways when he was not a threat to others or officers. The unjustified use of force by Defendant **Officers Choi; Hobson; Debellus; Lindquist; Munn; Hosepian; Ekimyan and Does 1-50** deprived Mr. Robinson of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the 4th amendment of the United States Constitution and applied to state actors by the Fourteenth Amendment.

75.     As a result of the foregoing, Mr. Robinson suffered physical pain and emotional distress, loss of enjoyment of his life, and loss of earning capacity.

76. The conduct of Defendant **Officers Choi; Hobson; Debellus; Lindquist; Munn; Hosepian; Ekimyan and Does 1-50** was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Robinson, and therefore warrants the imposition of exemplary and punitive damages.

77. The use of force on Mr. Robinson at the time of the incident was excessive and unreasonable as Mr. Robinson posed no immediate threat to himself or any of the officers at the time of the incident, and was done despite already receiving full compliance from Mr. Robinson. Mr. Robinson had not threatened any officer before he was assaulted, and Mr. Robinson complied with all limited commands made of him. Further, the conduct of the defendants violated their training and standard police officer training with respect to the same.

78. Mr. Robinson brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. §1988.

### THIRD CLAIM FOR RELIEF

### Malicious Prosecution (42 U.S.C. §1983)

### (By Mr. Robinson Against Officers Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist; Sgt. Virzi; Sgt. Fekety And Does 1-50)

79. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

80. Defendants **Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist; Sgt. Virzi; Sgt. Fekety And Does 1-50**, while acting under color of law, deprived Plaintiff of his civil rights, more particularly, his right to be free from malicious prosecution.

81. **Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist; Sgt. Virzi; Sgt. Fekety And Does 1-50** contributed to, caused, or initiated a criminal prosecution

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

against Mr. Robinson with malice and/or with the purpose of depriving him of his constitutional rights.

82.     Defendants did not have probable cause to arrest or prosecute Plaintiff, and initiated prosecution for the purpose of evading civil liability and to justify the illegal detention. Defendants knew the series of events described above. Yet, Defendants submitted a blatantly false and misleading police report. Mr. Robinson did not display any behaviors that would warrant a reasonable officer to charge him with resisting arrest. The officers also did not have the authority to substantiate a citizen's arrest of Mr. Robinson.

83.     The prosecution ultimately terminated in Mr. Robinson's favor, with a dismissal of charges on or around March 2022. Defendants knew or should have known the initial arrest of Mr. Robinson lacked probable cause, and that Mr. Robinson was innocent.

84.     Plaintiff brings this action under federal law. The constitutional source against malicious prosecution is primarily the due process clause of the Fourteenth Amendment, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to be free from malicious prosecution is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

85.     Defendants **Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist; Sgt. Virzi; Sgt. Fekety And Does 1-50** were each jointly and severally responsible not to bring a malicious prosecution against Mr. Robinson. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

86. The conduct of Defendants **Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist; Sgt. Virzi; Sgt. Fekety And Does 1-**50 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Mr. Robinson and therefore warrants the imposition of exemplary and punitive damages.

87. Mr. Robinson brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom, Policy and/or Practice**

**(42 U.S.C. §1983) (By Mr. Robinson Against City of Burbank, Burbank Police Department; And Does 1-50)**

88. Mr. Robinson repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

89. At all times herein alleged, Defendants **Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist; Sgt. Virzi; Sgt. Fekety and Does 1-50** were acting pursuant to BPD municipal policy when they detained and arrested Plaintiff on September 2, 2021.

90. Mr. Robinson is informed and believes, and on that basis alleges Defendants **Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist; Sgt. Virzi; Sgt. Fekety and Does 1-50** were not disciplined for the forced used, arrest and prosecution of Mr. Robinson.

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

91.    For years, Defendants COB and BPD have had a pattern and practice of arresting without probable cause and failing to use appropriate and generally accepted law enforcement procedures in investigating allegations of domestic violence.

92.    Defendants COB have had a pattern and practice of relying solely on the claim of a citizen witness and conducting citizens arrest without independent probable cause in violation of the United States Constitution. When a private person requests to make an arrest under California *Penal Code* § 837, COB and BPD routinely fail to independently investigate the claim of that citizen witness, which includes but is not limited to investigating the basis of the witness' knowledge and interviewing other witnesses. COB and BPD routinely fail to investigate that the facts provided by the citizen wishing to make an arrest are sufficiently detailed to cause a reasonable officer to believe a crime had been committed and the named suspect was the perpetrator. As a result, COB and BPD routinely conduct citizen's arrest without the requisite probable cause in order to reasonably believe that a crime has occurred.

93.    This pattern, practice and custom of misconduct violates the Constitution and federal law through:

      A. unlawfully arresting and/or booking individuals pursuant to California *Penal Code* § 837;

      B. failing to investigate claims of crimes;

      C. solely relying on the claim of a complaining witness to conduct an arrest;

      D. not independently investigating the claim of a citizen witness before conducting an arrest;

      E. arresting citizens without probable cause;

      F. encouraging private persons to sign a citizens arrest despite knowing there is no independent probable cause;

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

G. arresting individuals despite explicitly confirming they were not engaged in criminal activity;

H.  arresting individuals solely based on another's desire to engage in a "citizen's arrest" without any independent investigation;

I. Unlawfully arresting and/or booking individuals being investigated for domestic violence regardless of the existence of probable cause that the alleged domestic violence actually occurred or any justification for the arrest;

J. arresting and/or booking male domestic violence suspects without justification or probable cause that the domestic violence actually occurred or any justification for the arrest;

K. failing to use appropriate and generally accepted law enforcement procedures in investigating allegations of domestic violence to cover up violations of constitutional rights by failing to properly investigate and/or evaluate complaints or incidents of domestic violence;

L. failing to use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of police misconduct related to domestic violence investigations, in violation of the Fourteenth Amendment and federal statutory law;

M. the use of unreasonable force in violation of the Fourth Amendment; and

N. discrimination against African-American residents on the basis of race without probable cause.

94.    Officers instead encourage other citizens to conduct citizens arrest in lieu of probable cause.

///

///

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

95.     COB and BPD also continues a pattern and practice of using force and arresting someone only for obstruction of justice, thus raising the question of what legitimate law enforcement objective was being obstructed.

96.     On and information and belief, the City of Burbank has a *de* facto pattern and practice of stopping and arresting people, such as Plaintiff, under pretextual violations of law, such as purported violations of *Penal Code* § 148, notwithstanding the lack of probable cause. Moreover, the City has a *de* facto pattern and practice of using unreasonable force to apprehend non-threatening, complying individuals when arresting them on pretextual grounds, such as the ostensible *Penal Code* § 148 violation in Plaintiff's case BPD Officers routinely fail to articulate facts sufficient to support the predicate of reasonable suspicion required for a detention consistent with the Fourth Amendment under *Terry v. Ohio*, 392 U.S. 1, 21 (1986).

97.     BPD has been on notice of the need to focus on this issue since at least 2009, when a complaint filed by former Burbank Police Department Officers prompted the FBI conducted an investigation into Burbank Police Department. The Complaint filed by Omar Rodriguez, Cindy Guillen-Gomes, Steve Karagiosian, Elfego Rodriguez, and Jamal Childs alleges they were subject to retaliation for complaints about discrimination and harassment that were rampant through the Burbank Police Department. The Complaint further alleged that the close alliance between Burbank Police Department and the Burbank Police Officers Association ("BPOA"), i.e., the union. The union leadership consisted, in part, of the same individuals who were responsible for this rampant discrimination and harassment.

98.     Following the civil suit commenced by the seven aforementioned current and former officers against the City of Burbank and the Burbank Police Department, the FBI investigated allegations of excessive force by Burbank Police Officers.

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

Federal investigators ordered Burbank officials to submit reports and information related to their use of force, defensive tactics, tasers, pepper spray and/or the rules and ramifications pertaining to the use of excessive force or a violation of civil/constitutional rights.

### Theory No. 3 – Custom of Lack of Meaningful Oversight

99. The COB currently possesses an obstructive custom and practice designed to discourage meaningful oversight over rogue employees.

100. At all times herein mentioned, there was a custom and practice of practice of allowing the Officers to regularly deploy excessive force or harass citizens with impunity. In particular, Officers employed by Defendants COB and BPD harassed citizens without probable cause, caused criminal charges to be filed against citizens to avoid civil liability and used excessive force on persons who were unarmed and/or did not represent a threat to life or of serious bodily injury as identified below. These Officers encouraged, and in some cases directly participated, in the filing of criminal charges in similar cases where citizens exercised their rights under the United States Constitution. Defendants knew or reasonably should have known their officers had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written BPD policies, including detainment, arrests and probable cause. These incidents did not result in discipline and this culture of a lack of accountability were a moving force in **Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist; Sgt. Virzi; Sgt. Fekety and Does 1-50** and was a moving force in the detention, investigation and prosecution of Aerin Robinson.

101. The following are a list of incidents exemplifying the aforementioned policies, customs, practices and usages of Defendant COLA:

    a. <u>Leonardo Lazzeretti.</u> On or about October 13, 2017, Mr. Lazzeretti began arguing with his wife at an Olive Garden in Burbank, California.

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

Although the couple resolved their argument while waiting for their food, two officers from the City of Burbank Police Department and asked Plaintiff and his wife to follow them outside. The officers interviewed the couple separately. During his interview, Lazzeretti denied that a physical fight had occurred and explained that it was only a verbal argument. The officers took Lazzeretti to the Burbank Police station and booked him for physically assaulting his wife without probable cause.

b. <u>Susan Charalambous.</u> On or about June 10, 2015, Ms. Charalambous was speaking on her cell phone in her front yard after 10:00 p.m. BPD received a call from Ms. Charalambous's neighbor, claiming that Ms. Charalambous was disturbing the peace because she was speaking too loudly on her phone in her yard. Ms. Charalambous informed officers she could not talk inside her home because of bad service but that she had the right to be in her yard. In response, BPD Sergeant Canales encouraged the neighbor to sign a citizens arrest, which the neighbor did. In accordance with his order, the responding BPD officers proceeded to handcuff and arrest Ms. Charalambous for disturbing the peace. BPD released her the next morning.

c. <u>Taylor.</u> Employment action brought by BPD's former deputy chief of police where the jury found the deputy chief was demoted and terminated in retaliation for reporting incidents of excessive force by BPD officers. August of 2017 and paid $205,239 in annual salary, including overtime, other earnings and benefits as of 2018.

d. <u>Willian McCall.</u> On or about December 3, 2020, William McCall was walking home in Burbank, when a BPD Officer approached him and

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

began to interrogate him. At the time of his detention, BPD had no observed any behavior that would lead a reasonable officer to believe that McCall had committed, was committing or was about to commit a crime. When McCall reminded Officer Robles that his was not the first time McCall was stopped without cause and harassed by this Officer. As a result, without warning, consent, or cause, BPD Officer Robles proceeded to grab and twist McCall's arm behind his back. At no point did McCall resist or obstruct BPD. The BPD Officers proceeded to handcuff McCall and tackled him to the ground face-first, causing abrasions to McCall's face. BPD officers were on top of McCall's person. McCall was ultimately booked and held in custody for an alleged violation of California Penal Code § 148(a)(1) (resisting or obstructing an officer).

102. Plaintiff is informed, believes, and thereupon alleges that these policies, practices, customs, and procedures are intentional and/or the result deliberate indifference on the part of the City, by and through its decision makers.

103. **Ulrich; Moreno; Quintero; Ekimyan; Munn; Lindquist; Sgt. Virzi; Sgt. Fekety and Does 1-50** encouraged, and in some cases directly participated, in the filing of criminal charges in similar cases where citizens were complying and non-threatening. These incidents did not result in discipline and this culture of a lack of accountability were a moving force in the detention, investigation and prosecution of Mr. Robinson.

104. The actions and inactions of the City of Burbank were known or should have been known to the policy makers responsible for and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or the strong likelihood that constitutional rights would be violated as a result of failing

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

to train, supervise or discipline in areas where the need for such training and supervision was obvious.

105.   The final policy makers DOES 5-8 acted under color of state law. They had final policymaking authority from the City of Burbank.

106.   Defendants COB had not only constructive but actual knowledge of department wide problems problem before the detention and arrest of Mr. Robinson and failed to take any reasonable steps to stop them, or rectify the culture of harassing citizens without discipline.

107.   As a direct and proximate result of Defendant City of Burbank's acts and omissions, Plaintiff sustained injury and damages.

108.   As a result of defendants' and each of their violations of Mr. Robinson's constitutional rights as set forth herein, Mr. Robinson was damages as alleged above.

109.   Plaintiff bring this claim in his individual capacities and in each case seek compensatory damages, including loss of consortium, past and future financial loss, physical injuries, and emotional and mental distress for the violation of Plaintiffs' rights. Plaintiffs also seek punitive damages and attorney's fees under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. §1983)

### Mr. Robinson v. Defendant City of Burbank and Does 6-10

110.   Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

111.   Based upon the principles set forth in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), Defendant City of Burbank is liable for all injuries sustained by Plaintiffs set forth herein. Defendant City of Burbank bears liability because its failure to train Officers was a cause of Plaintiff's

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

injuries. The training policies of Defendant City of Burbank were not adequate to train its Officers to handle the usual and recurring situations with which they must deal.

112. Specifically, the City has failed to train officers on preventing positional asphyxia – which happens when a person, such as Plaintiff, is lying on his stomach and has trouble breathing because pressure is applied to his back. Officers repeatedly fail to explicitly articulate any rationale for keeping citizens in prone position in their Incident Reports including expressly addressing their considerations of positional asphyxia.

113. COB's accountability systems do not effectively detect or prevent these patterns of unlawful conduct in the City of Burbank – which was a moving cause for Mr. Robinson's constitutional injury.

114. The City of Burbank utilizes an internal Early Intervention System to manage and assess the performance of its officers and train them on routine concerns pertaining to the laws of arrest. This program is inadequate because COB reported having "habitual offenders" who were known within the organization to repeatedly engage in abusive police tactics. According to COB's Office of Independent Review (OIR) Group 2020 report, COB reported these individuals were getting "better" but had not eliminated the widespread behavior within the Department.

115. The OIR First Report Regarding the Monitoring of Burbank Police Department in 2012, documented the Department's lack of thoroughness in gathering evidence. Specifically, OIR found that officers routinely failed to interview relevant witnesses when conducting investigations. For example, after a call for service regarding a man creating a disturbance, officers responded and used force to take the man into custody. No third-party witnesses were identified or interviewed prior to the use of force and arrest.

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

116. COB's also fails to train its officers regarding the use de-escalation tactics. In 2018, the OIR determined that the Department needed to closely examine each encounter preceding a use of force and determine whether there were times during the conversation where disengagement would have been the preferred option. The Critical Incident Review Board (CIRB) serves as an executive-level check and balance on COB's protocol for every use of force. The board is comprised of the Deputy Chief and three Captains. In 2018, COB responded that during the CIRB sessions, CIRB would conduct a review to determine if would have been more appropriate to disengage before a use of force incident occurs but did not provide specific action steps as to how they would address the issue.

117. In 2020, OIR recommended that COB needed to amend their policy to require officers detail in writing the circumstances surrounding their use(s) of force to include any efforts to de-escalate prior to the use of force; and if no de-escalation techniques were deployed, an explanation for why none were deployed. In response, COB rejected this amendment to their policy, first stating that detailing de-escalation techniques in use of force incidents is unnecessary. COB further rejected this de-escalation policy amendment because if Officers did not engage in de-escalation tactics before using force, failed to document those efforts in a subsequent report or failed to articulate why they did not use de-escalation techniques before using force, Officers would be subject to discipline. COB instead took the position that the officers and supervisors would be held accountable through the Critical Incident Review Board (CIRB) process rather than any disciplinary process.

118. In OIR's 2020 report, COB was put on notice once again regarding their CIRB force review process, and advised COB to be honest in its use of force review, disciplining officers when their tactics and actions violate policy. OIR specifically reported that to hold officers accountable, COB needed to revise its CIRB force

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER
COLOR OF STATE LAW**

review policy to consider whether de-escalation techniques were deployed prior to moving to force options and if not, whether it would have been appropriate to consider them. COB refused to include de-escalation techniques in any aspect of their policy because policy violations are considered misconduct and COB reported it unnecessary to discipline officers for failure to de-escalate before using force. The OIR further determined that when restraints are deployed during an arrest, the City's force review needed to include an assessment of that maneuver as well as an assessment of tactics and circumstances that lead up to the force itself. COB's unwillingness to amend any aspect of their use of force policy reflects a larger custom and practice of COB's refusal to hold officers accountable and discipline them for excessive use of force and failure to deploy de-escalation tactics.

119. OIR examined the process by which COB determined whether an officer should be subject to discipline for misconduct. OIR found that COB officers were excessively categorized as "exonerated." OIR explained that a finding of "exonerated" is limited to situations in which a) the factual evidence is not in dispute, b) the allegation as made does not constitute a violation of policy and c) there are no concerns, in any respect, as to how the officer handled that situation. COB's disproportionate use of finding officers "exonerated" reflects a larger custom, pattern and practice of lack of meaningful accountability and oversight. COB unjustifiably exonerates officers despite their policy violations, which further highlights COB's refusal to discipline officers despite the discipline being warranted because of misconduct.

120. In cases where COB did substantiate allegations of officer misconduct, the OIR found that the Department failed to respond with the appropriate consequences consistently and sufficiently. COB reported having a layered review

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

process but lacks a formalized after-action review report that documents the CIRB analysis and ensures memorialization of decisions.

121. COB failed to properly monitor, evaluate, investigate, and discipline its police officers, with deliberate indifference to the constitutional rights of persons being investigated for domestic violence. The city exhibited deliberate indifference to the constitutional rights of persons being investigated for domestic violence, by failing to adequately train its police officers to conduct proper investigations of domestic violence reports and to make arrests only in the presence of probable cause.

122. COB, the named officers and Individual Doe defendants failed to act as a reasonable law enforcement official would in similar circumstances by using excessive force against Plaintiff, a complying, non-threatening individual, and arresting Plaintiff without probable cause. COB, the named officers and Individual doe defendants failed to act as a reasonable law enforcement official would in a similar circumstance by recommending, authorizing and ratifying the use of excessive force against Plaintiff and/or recommending, authorizing, and ratifying the arrest of Plaintiff without probable cause.

123. Defendant COB was deliberately indifferent to the obvious consequences of its failure to train its sheriff's Officers adequately. In 2020, the Department reported 84 uses of force similar to Mr. Robinson. Specifically, the City of Burbank failed to adequately train its Officers with regard to deciding when it is appropriate to detain an individual, the investigation and reporting of detentions, the use of unreasonable and excessive force, particularly deadly force, the immediate need to use deadly force, the use of proper police tactics and with respect to accurate reporting writing and recommending prosecution to deter crime.

124. The failure of Defendant City of Burbank to provide adequate training caused the deprivation of the Plaintiffs' rights by **Officers; And Does 1-5**; that is, the

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

Defendant City of Burbank' failure to train is so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the ultimate injury.

125. By reason of the aforementioned acts and omissions described in the preceding paragraphs, Plaintiff Mr. Robinson suffered serious bodily injury, emotional and mental distress and financial loss. Accordingly, Defendants City of Burbank and DOES 6-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

126. Plaintiff bring this claim in their individual capacities and in each case seek compensatory damages, including loss of consortium, past and future financial loss, physical injuries, and emotional and mental distress for the isolation of Plaintiffs' rights. Plaintiffs also seek punitive damages and attorney's fees under this claim.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Supervisor Liability (42 U.S.C. §1983)

### Mr. Robinson v. Sgt. Vrzi and Does 6-10

127. Mr. Robinson repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

128. Defendants **Sgt. Vrzi And Does 1-5** while acting under color of law, deprived Plaintiff of his civil rights, more particularly, his right to be free from unreasonable searches and seizures when he approved and participated in the unless arrest of Mr. Robinson.

129. Sgt. Virzu and Does 1-50 knew that his subordinates were arresting Mr. Robinson without probable cause and knew or reasonably should have known that the subordinates' conduct would deprive the plaintiff of these rights and

1    130.  **Sgt. Virzu** failed to act to prevent his subordinates from engaging in

such conduct.

131.  As a direct and proximate result of the aforementioned conduct, Plaintiff suffered a loss of liberty, past and future earnings, physical injuries and emotional distress.

132.  Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. § 1988.

**SEVENTH CLAIM FOR RELIEF**

**Deprivation of Civil Rights – Fabrication of Violations – (42 U.S.C. § 1983)**

**(By Robinson Against Officers Munn, Choi, Ekimyan; Moreno; Lindquist;**

**Hobson; Sgt. Virzi; And Does 1-5)**

133.  Mr. Robinson repeats and realleges each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

134.  Defendants **Officers Munn, Choi, Ekimyan; Moreno; Lindquist; Hobson Sgt. Virzi; And Does 1-5** while acting under color of law, deprived Plaintiff of his civil rights, more particularly, his right to due process of law, by deliberately drafting a false report and concealing evidence that resulted in prolonging Mr. Robinson's underlying prosecution for a crime he did not commit. BPD Officer's actions deprived Mr. Robinson of his liberty because the very next day, the District Attorney filed a Criminal Complaint based entirely on his false police report, which was used in Mr. Robinson's underlying criminal proceedings.

135.  The use of false evidence asserted herein, encompasses the conduct as alleged herein and undiscovered conduct. Defendants further failed to correct false testimony and evidence contained within their individual reports regarding the

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

conduct of Mr. Robinson, as alleged above. Defendants knew or should have known the evidence was false. At all relevant times, BPD Officers **And Does 1-50** knew or should have known Mr. Robinson was innocent. In addition, after charges were filed against Mr. Robinson, Defendants **BPD Officers And Does 1-50** failed to take action to secure Mr. Robinson's freedom from wrongful prosecution.

136.    Defendants' conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth. The false and misleading statements of Defendants and the arrest team were all used to try and obtain a baseless conviction of Plaintiff.

137.    Defendants **BPD Officers And Does 1-50** knew or should have known that evidence set forth above was false, and that the witnesses were providing false evidence. As noted above, independent third-party witnesses voluntarily contacted BPD Officers to report Mr. Robinson had not committed any crime.

138.    The constitutional source against using false evidence is primarily the due process clause of the Fourteenth Amendment, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to be free from false evidence being used against him that led to a false and wrongful prosecution, is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

139.    Defendants **BPD Officers And Does 1-5** were each jointly and severally responsible to not use false evidence against Mr. Robinson. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

140. As a direct and proximate result of the aforementioned conduct, Plaintiff suffered a loss of liberty, past and future earnings, phyiscal injuries and emotional distress.

141. The conduct of **BPD Officers. And Does 1-5** was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

142. Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorney's fees under 42 U.S.C. § 1988.

## <u>PRAYER</u>

WHEREFORE, Plaintiffs pray judgment against Defendants and each of them, as to each claim for relief as applicable, as follows:

1. For General and Special Damages according to proof;

2. For Exemplary Damages as provided by law; in an amount to be proved against each individual Defendant;

3. For Attorney's Fees pursuant to 42 U.S.C. 1985 and 1988;

4. For Costs of Suit;

5. For such other and further relief as the Court may deem proper.

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues.

Dated: March 7, 2023                                Respectfully Submitted,

**FILER | PALMER, LLP**


By: _Paige S Poupart_ _____
Justin A. Palmer
Paige S. Poupart
Attorneys for Plaintiff,
AERIN ROBINSON

**COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

FILER|PALMER, LLP
249 East Ocean Boulevard, Suite 501
Long Beach, CA 90802
Telephone (562) 304-5200